# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION


| | |
|---|---|
| **MARCUS GRAY P/K/A FLAME, et al.,** ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | Case No.: 14CV1183 HEA |
| ) | |
| **KATHERYN ELIZABETH HUDSON,** ) | |
| **P/K/A KATY PERRY, et al.,** ) | |
| ) | |
| Defendants. ) | |


## <u>OPINION, MEMORANDUM AND ORDER</u>

This matter is before the Court on Defendant Katheryn Hudson,

professionally known as Katy Perry's (Perry) Motion to Dismiss the First

Amended Complaint for Lack of Personal Jurisdiction and in the Alternative, to

Transfer. [Doc. No. 39], Defendants Jordan Houston, P/K/A Juicy J, Lukasz

Gottwald P/K/A Dr. Luke, Sarah Hudson, Karl Martin Sandberg P/K/A Max

Martin, and Henry Walter P/K/A Cirkut's Renewed Motion to Dismiss for Lack of

Personal Jurisdiction, or in the Alternative, to Transfer and Defendant Capitol

Records, LLC's Renewed Motion to Transfer, [Doc. No. 42]. Plaintiffs have filed a

Response in opposition to the Motion. Defendants have filed Replies and

Plaintiffs have filed supplemental facts in opposition. For the reasons set forth

below, Defendants' Motions are granted.

# Facts and Background[1]

Plaintiffs bring this action against Defendants under the Copyright Act of 1976, as amended, 17 U.S.C. § 101 *et seq.*, alleging copyright infringement of Plaintiffs' copyright in their Christian Gospel hip hop song entitled "Joyful Noise." Plaintiffs claim that Defendants' song, "Dark Horse" infringes Plaintiffs' copyright in Joyful Noise, which was released five years before Dark Horse.

The First Amended Complaint alleges that Plaintiff Marcus Gray is an American Christian hip hop musician and a citizen of Missouri who resides within the Eastern Division of this District. Plaintiff Chike Ojukwu is an American Christian hip hop musician and record producer and a citizen of Missouri who resides within the Eastern Division of this District. Plaintiff Emanuel Lambert is an American Christian hip hop musician and record producer and a citizen of Pennsylvania who resides in Aldan, Pennsylvania.

The First Amended Complaint further alleges that upon information and belief, Defendant Katheryn Elizabeth Hudson (p/k/a Katy Perry) is a citizen of California presently residing at 7310 Mulholland Drive, Los Angeles, CA 90046. Upon information and belief, Defendant Jordan Michael Houston (p/k/a Juicy J) is a citizen of Tennessee presently residing at 411 North Oakhurst Drive #402, Beverly Hills, CA 90210. Upon information and belief, Defendant Lukasz

---

[1] The recitation of facts is taken from Plaintiff's Complaint and are taken as true for the purposes of this motion. Such recitation in no way relieves any party from the necessary proof thereof in later proceedings.

Gottwald (p/k/a Dr. Luke) is a citizen of California presently residing at 8700 Hollywood Boulevard, West Hollywood, CA 90069. Upon information and belief, Defendant Karl Martin Sandberg (p/k/a Max Martin) is a citizen of California presently residing at 882 North Doheny Drive, West Hollywood, CA 90069. Upon information and belief, Defendant Henry Russell Walter (p/k/a Cirkut) is a citizen of California residing at 26664 Seagull Way, Unit A211, Malibu, CA 90265-4543. Upon information and belief, Defendant Sarah Theresa Hudson is a citizen of California residing at 5000 Kester Ave., #5 Sherman Oaks, CA 91403. Defendant Capitol Records, LLC ("Capitol Records") is a Delaware limited liability company with its principal place of business at 150 Fifth Avenue, New York, New York 10011. Vevo, LLC, which operates a commercial site on YouTube that features music videos of Capitol Records songs, is an affiliate of Capitol Records and has a principal place of business at the same address as Capitol Records.

This is an action for copyright infringement arising under the Copyright Act. The Court has subject matter jurisdiction under 17 U.S.C. § 501 and 28 U.S.C. §§ 1331 and 1338(a).

Plaintiffs claim the Court has personal jurisdiction over all of the defendants because each of them has sufficient contacts with the State of Missouri to satisfy this jurisdictional requirement, to wit: Each of these defendants, acting personally,

through authorized agents and representatives, or jointly with one another, have purposefully, foreseeably, systematically, and continuously over the past year directed their marketing, promotion, sale, and public performance of their infringing Dark Horse song toward residents of the State of Missouri and, as a direct result thereof, have injured these Plaintiffs in Missouri by infringing their exclusive rights under the Copyright Act by, among other things:

a. Authorizing, arranging for and profiting from Missouri residents purchasing CDs and digital downloads of the Dark Horse song, streaming the audio version of the Dark Horse song, and viewing the music video version of the Dark Horse song on the commercial YouTube and Vevo websites;

b. Authorizing, arranging for, and profiting from Missouri residents purchasing digital downloads of the Dark Horse song directly from interactive links embedded in the Internet pages for the music video version of the Dark Horse song on the commercial YouTube and the Vevo websites;

c. Authorizing, arranging for, and profiting from the commercial broadcast of the Dark Horse on radio stations throughout Missouri and the nation;

d. Authorizing, arranging for, profiting from, and/or performing the Dark Horse song on national television programs that are broadcast into Missouri, including the performance of the song on or about January 26, 2014 at the nationally televised 56th Annual Grammy Awards®, which was broadcast by CBS

television and reached a viewing audience of more than 28 million, including, upon information and belief, hundreds of thousands of citizens of Missouri;

e. Authorizing, arranging for, profiting from, and/or performing the Dark Horse song at live concerts in Missouri in 2014 at the Scottrade Center in St. Louis (on August 17) and the Sprint Center in Kansas City (on August 19); and

f. Actively promoting the Dark Horse song on their social media sites and including direct links to the iTunes page for purchasing a digital download of that song.

Plaintiffs further contend that the viewing of the infringing music video and viewing of the Grammy Awards television show contribute to Defendants' contacts with Missouri.

With respect to Defendant Perry, Plaintiffs allege that her additional Missouri contacts include:

a. She operates an interactive website where she promotes and sells to citizens of Missouri and elsewhere copies of the Dark Horse song, as shown on the screenshots from her website;

b. She traveled into Missouri for the commercial purpose of performing two concerts in Missouri in August of 2014 where, on information and belief, her performance of the infringing Dark Horse song was seen by approximately 40,000 concertgoers.

With respect to each of the other five individual Defendants who are listed as writers and co-owners of the copyright in the Dark Horse song, in addition to their Missouri contacts alleged above, these Defendants knew, intended, expected, and agreed that a song that they would co-write for Defendant Perry would be distributed, promoted, broadcast, and sold throughout the nation, including in Missouri, in that, among other things, they knew or should have known that:

    a. Defendant Perry's prior two albums—*One of the Boys* and *Teenage Dreams*—had each sold more than 5 million copies nationwide, including in Missouri;

    b. Twelve singles from those two albums had sold more than 1 million copies each nationwide, including in Missouri;

    c. Seven of those 12 singles had reached the Number 1 spot on the **BILLBOARD HOT 100**, which is the American music industry standard record chart for singles, published by *Billboard* magazine and based on radio play, streaming online, and sales; and

    d. The commercial and geographic scope of a song performed by Defendant Perry would exceed the commercial and geographic scope of virtually every other performing artist, as confirmed earlier this year by the Recording Industry Associate of America ("RIAA"), in a ceremony naming Perry as the performing artist with the most Gold and Platinum digital single certifications in history,

which—as stated in the RIAA press release—"makes Perry the first artist to surpass the 70 million digital award threshold—20 million ahead of any other artist."

## Discussion

## Motions to Dismiss

A defendant may move to dismiss a case under Rule 12(b)(2) of the Federal Rules for "lack of personal jurisdiction." Fed. R. Civ. P. 12(b)(2).

"Personal jurisdiction over a defendant represents the power of a court to enter 'a valid judgment imposing a personal obligation or duty in favor of the plaintiff.' " *Viasystems, Inc. v. EBM–Papst St. Georgen GmbH & Co., KG,* 646 F.3d 589, 592–93 (8th Cir.2011) (quoting *Kulko v. Superior Court of Cal.,* 436 U.S. 84, 91 (1978)). Rule 12(b)(2) of the Federal Rules of Civil Procedure authorizes a pre-answer motion to dismiss for "lack of personal jurisdiction." FED.R.CIV.P. 12(b)(2).

As the Eighth Circuit Court of Appeals recently explained,

"To allege personal jurisdiction, 'a plaintiff must state sufficient facts in the complaint to support a reasonable inference that the defendant[ ] can be subjected to jurisdiction within the state.' " *Wells Dairy, Inc. v. Food Movers Int'l, Inc.,* 607 F.3d 515, 518 (8th Cir.) (quoting *Dever v. Hentzen Coatings, Inc.,* 380 F.3d 1070, 1072 (8th Cir.2004)), *cert. denied,* —— U.S. ——, 131 S.Ct. 472 (2010). "If the

defendant controverts or denies jurisdiction, the plaintiff bears the burden of proving facts supporting personal jurisdiction." *Id.* This "showing must be tested, not by the pleadings alone, but by the affidavits and exhibits presented with the motions and in opposition thereto." *Id.* (internal quotation marks omitted). *Dairy Farmers of Am., Inc. v. Bassett & Walker Int'l, Inc.,* 702 F.3d 472, 474–75 (8th Cir.2012); *Pangaea, Inc. v. Flying Burrito, L.L.C.,* 647 F.3d 741, 744–45 (8th Cir.2011) ("Where, as here, 'the district court does not hold a hearing and instead relies on pleadings and affidavits, ... the court must look at the facts in the light most favorable to the nonmoving party, and resolve all factual conflicts in favor of that party.' " (quoting *Dakota Indus., Inc. v. Dakota Sportswear, Inc.,* 946 F.2d 1384, 1387 (8th Cir.1991), with internal citations omitted)).

Although the Court may consider affidavits and other matters outside of the pleadings on a Rule 12(b)(2) motion, the pleader's burden, in the absence of an evidentiary hearing, is only to make a "minimal" *prima facie* showing of personal jurisdiction, and the Court "must view the evidence in the light most favorable to the [pleader] and resolve all factual conflicts in its favor in deciding whether the [pleader] has made the requisite showing." *K–V Pharm. Co. v. Uriach & CIA, S.A.,* 648 F.3d 588, 591–92 (8th Cir.2011). Notwithstanding that facts are viewed in the light most favorable to the pleader, " '[t]he party seeking to establish the court's in personam jurisdiction carries the burden of proof, and the burden does not shift to

the party challenging jurisdiction." *Viasystems, Inc.,* 646 F.3d at 592 (quoting *Epps v. Stewart Info. Servs. Corp.,* 327 F.3d 642, 647 (8th Cir.2003)).

The perspective in this Circuit is one where courts should "approach [the] analysis of personal jurisdiction on two levels, first examining whether the exercise of jurisdiction is proper under the forum state's long-arm statute[,] [and] [i]f the activities of the non-resident defendant satisfy the statute's requirements, [to] then address whether the exercise of jurisdiction comports with due process." *Dakota Indus. v. Dakota Sportswear*, 946 F.2d 1384, 1391 (8th Cir. 1991).[2]

"Due process requires that a defendant have certain 'minimum contacts' with the forum state for personal jurisdiction to be exercised." *Myers v. Casino Queen, Inc.*, 689 F.3d 904, 911 (8th Cir. 2012) (citing *Int'l Shoe Co. v. Washington.*, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945)). More specifically,

> Contacts with the forum state must be sufficient that requiring a party to defend an action would not "offend traditional notions of fair play

---

[2] It is not clear whether or not the reach of a state's long-arm statute is relevant to the personal jurisdiction inquiry in an action against a non-resident defendant that is *not* based on diversity of citizenship. *Cf. Dairy Farmers of Am., Inc.,* 702 F.3d at 475 (" 'Specific personal jurisdiction can be exercised by a federal court in a diversity suit only if authorized by the forum state's long-arm statute and permitted by the Due Process Clause of the Fourteenth Amendment.' " (quoting *Viasystems,* 646 F.3d at 593)); *see also Dakota Indus., Inc. v. Dakota Sportswear, Inc.,* 946 F.2d 1384, 1388–89 & n. 2 (8th Cir.1991) (noting that, even though subject matter jurisdiction in the case was predicated on a "federal question," so that due process for personal jurisdiction purposes was examined in light of the Fifth Amendment rather than the Fourteenth Amendment, and Congress had authorized nationwide service of process in federal question cases, the court nevertheless applied "minimum contacts" analysis and considered the reach of the state's long-arm statute).

and substantial justice." [*Int'l Shoe Co.*, 326 U.S.] at 316, 66 S. Ct. 154, 90 L. Ed. 95 (internal quotation marks and citation omitted). "The 'substantial connection' between the defendant and the forum State necessary for a finding of minimum contacts must come about by an action of the defendant purposefully directed toward the forum State." *Asahi Metal Indus. Co. v. Super. Ct. of Cal.*, 480 U.S. 102, 112, 107 S. Ct. 1026, 94 L.Ed.2d 92 (1987) (internal citations omitted).

*Myers*, 689 F.3d at 911. The Supreme Court has observed:

Even if the defendant would suffer minimal or no inconvenience from being forced to litigate before the tribunals of another State; even if the forum State has a strong interest in applying its law to the controversy; even if the forum State is the most convenient location of litigation, the Due Process Clause, acting as an instrument of interstate federalism, may sometimes act to divest the State of its power to render a valid judgment.

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 294 (1980).

There are two methods in which the Due Process Clause may be satisfied such that minimum contacts between the defendant and the forum state are established: the first is through general jurisdiction, and the second is through specific jurisdiction. General jurisdiction refers to the power of a court to hear a lawsuit against a defendant who has "continuous and systematic" contacts with the forum state, regardless of where the cause of action actually arose. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415–16 (1984). Here, Defendant concedes that the Court cannot maintain general personal jurisdiction over it, and alleges only specific personal jurisdiction.

"Specific personal jurisdiction, unlike general jurisdiction, requires a relationship between the forum state, the cause of action, and the defendant." *Myers*, 689 F.3d at 912 (citing *Helicopteros*, 466 U.S. at 414). The Eighth Circuit has established a five-factor test to determine whether a defendant's contacts with the forum state are sufficient to establish personal jurisdiction over the defendant. These factors, from *Land–O–Nod v. Bassett Furniture Industries, Inc.*, 708 F.2d 1338, 1340 (8th Cir. 1983), are: (1) the nature and quality of contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties. "[The court] must look at all of the factors in the aggregate and examine the totality of the circumstances in making a personal jurisdiction determination." *Johnson v. Arden*, 614 F.3d 785, 794 (8th Cir. 2010) (citation omitted).

In addition to the five *Land–O–Nod* factors, the Court must consider whether Defendant's alleged intentional acts were performed "for the very purpose of having their consequences felt in the forum state." *Dakota Indus.*, 946 F.2d at 1390–91. This is known as the "effects test," which was first employed by the Supreme Court in *Calder v. Jones*, 465 U.S. 783 (1984). The *Calder* effects test requires Plaintiff to make three *prima facie* showings in order for Defendant's alleged copyright infringement to serve as a source of personal jurisdiction.

Plaintiff must show that Defendant's acts (1) were intentional, (2) were uniquely or expressly aimed at Missouri, and (3) caused harm, the brunt of which was suffered—and which Defendant knew was likely to be suffered—in Missouri. *Johnson*, 614 F.3d at 796 (internal quotation omitted). Rather than superseding the *Land-O-Nod* five-part test for personal jurisdiction, the *Calder* effects test merely "requires the consideration of additional factors when an intentional tort is alleged." *Dakota Indus.*, 946 F.2d at 1391; *see also Johnson*, 614 F.3d at 796–97.

The Eighth Circuit has clarified that it does not adhere to a "proximate cause standard" for the required connection between the defendant's contacts with the forum and the plaintiff's cause of action. *See id.* Rather, specific jurisdiction is warranted when the defendant purposely directs its activities at the forum state and the litigation "result[s] from injuries . . . relating to [the defendant's] activities [in the forum state.]" *Steinbuch v. Cutler*, 518 F.3d 580, 586 (8th Cir. 2008). Courts consider "the totality of the circumstances in deciding whether personal jurisdiction exists." *K-V Pharm. Co.*, 648 F.3d at 592–93.

Defendant Perry, and the Individual Defendants, (Houston, Gottwald, Sarah Hudson, Sandberg, and Walter), contend that this Court lacks personal jurisdiction over them and should therefore grant their Motions to Dismiss Plaintiff's claims. For the reasons discussed below, the Court agrees, will grant Defendants' Motions, and dismiss this action as to these defendants.

The Court frames its due process inquiry within the Eighth Circuit's admonition that "[s]pecific jurisdiction is proper 'only if the injury giving rise to the lawsuit occurred within or had some connection to the forum state, meaning that the defendant[s] purposely directed [their] activities at the forum state and the claim arose out of or relates to those activities.'" *Johnson*, 614 F.3d at 795 (quoting *Steinbuch*, 518 F.3d at 586 (citing *Burger King Corp.*, 471 U.S. at 472).

### 1.    The Nature and Quality of the Contacts with Missouri

The first *Land–O–Nod* factor concerns the nature and quality of Defendants' contacts with Missouri. It is undisputed that the Defendants never maintained businesses, properties, offices, employees in Missouri, and are not now, nor ever have been, registered to do business in Missouri.

**Defendant Perry**

Defendant Perry urges that due process analysis fails after consideration of the first factor alone.  Perry has submitted her affidavit in which she avers that she has no control over the commercial distribution of Dark Horse; her only contacts with Missouri are four concert performances during 2011 and 2014, which were part of international tours.  Moreover, the concerts were arranged through, and were services rendered by Perry to her California touring company, Kitty Purry, Inc.  Defendant Perry further avers that she has no involvement in the commercial distribution of the song anywhere, including Missouri.  Thus, the nature and

quantity of Perry's contacts with Missouri are limited to the concert appearances. These contacts fall within the random and fortuitous sphere of the analysis. Plaintiffs have presented no evidence that Perry purposefully directed any of her actions toward the citizens of Missouri such that she would be expected to be haled into a court located within the State.

**Individual Defendants**

The First Amended Complaint contains no allegations that the Individual Defendants have ever done anything in Missouri. Indeed, Plaintiffs' First Amended Complaint merely sets out that two of the three remaining Plaintiffs are citizens of Missouri, however, the fact that the harm from the alleged infringement may have been felt in Missouri is insufficient for the Court to exercise jurisdiction over these Defendants where there is nothing to support their actions being purposefully directed at Missouri citizens. The clear tenor of the allegations is that the distribution of the song Dark Horse was nation-wide with nothing to establish a direct relationship with Missouri. There are no contacts of these Defendants with Missouri.

Plaintiffs also contend that, because the subject song was offered for download and listening on a website, which is accessible in Missouri, Defendants have sufficient contacts with the state for this Court to exercise personal jurisdiction.

The *Zippo* test is instructive in evaluating the sufficiency of internet contacts under a specific jurisdiction analysis. *See Johnson*, 614 F.3d at 796 (citing *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997)). In *Zippo*, the court created a "sliding scale" to evaluate websites for conferring personal jurisdiction:

> At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise personal jurisdiction. The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site.

952 F. Supp. at 1124 (internal citations and quotation marks omitted).

In considering where the song is accessible on a website, the Court notes well the Eight Circuit's explanation that "under *Zippo*, whether specific personal jurisdiction could be conferred on the basis of an interactive website depends not just on the nature of the website but also on evidence that individuals in the forum state accessed the website in doing business with the defendant." *Johnson*, 614 F.3d at 797 (citing *id.* at 1125–26). In this regard, "although [a website] may be characterized as interactive, there is no evidence in the record that [Defendants]

engaged in any transaction or exchange of information with a Missouri resident via [the website], or that a Missouri resident ever accessed the website." *Id.* Furthermore, Defendants have presented affidavits that the website is owned and operated by a third party, not a party to this action. The actions of parties and entities not before the Court cannot be the basis upon which the Court could exercise jurisdiction over the parties that are before it.

The Court therefore finds that, due to the nature and quality of the contacts between the parties, Defendant s Perry and the Individual Defendants could not have reasonably anticipated being haled into court in Missouri, and thus, the first *Land–O–Nod* factor weighs in favor of Defendant.

## 2. The Quantity of Contacts

Because Plaintiff failed to sufficiently allege the nature and quality of the contacts between Defendant and Missouri to confer specific jurisdiction, the numerosity of such contacts is immaterial to the Court's analysis.

## 3. The Relationship of the Cause of Action to the Contacts

The third *Land–O–Nod* factor focuses on Defendants' contacts with Missouri as it relates to the particular cause or causes of action asserted. *Bell Paper Box, Inc. v. U.S. Kids, Inc.*, 22 F.3d 816, 819 (8th Cir. 1994). "The third factor distinguishes between specific and general [personal] jurisdiction." *Myers*, 689 F.3d at 911. This is so, because "[s]pecific personal jurisdiction, unlike general

jurisdiction, requires a relationship between the forum, the cause of action, and the

defendant." *Id.* at 912. The *Calder* effects test may be utilized in analyzing the

third factor

The *Calder* Court found that the defendants were subject to California's

personal jurisdiction because the defendants' acts were intentional, the allegedly

libelous article they wrote was centered on the life and career of a longstanding

California resident, "and the brunt of the harm, in terms both of Plaintiff's

emotional distress and the injury to her professional reputation, was suffered in

California." 465 U.S. at 789. Because the defendants' acts were "expressly aimed

at California," and they knew that "injury would be felt by Plaintiff in the State in

which she lives and works and in which the National Enquirer has its largest

circulation," the defendants were assumed to have reasonably anticipated being

haled into court in the forum state. *Id.* at 789–90.

Following *Calder*, cases decided throughout this Circuit uniformly have held

that in order for a defendant's tortious conduct to confer personal jurisdiction, there

must be a *prima facie* showing that the defendant's intentional acts were

"performed for the very purpose of having their consequences felt in the forum

state." *Dakota Indus.*, 946 F.2d at 1391 (internal citation omitted). *See, e.g.*,

*Johnson*, 614 F.3d at 796 (no personal jurisdiction where defendant's allegedly

defamatory comments were not expressly aimed at forum, and no other evidence of

minimum contacts existed); *Gen. Elec. Capital Corp. v. Grossman*, 991 F.2d 1376, 1387 (8th Cir. 1993) (no personal jurisdiction where "focal point" of tortious injury occurred in outside forum, even though the court agreed that effects of harm ultimately were felt in forum); *Hicklin Eng'g, Inc. v. Aidco, Inc.*, 959 F.2d 738, 739 (8th Cir. 1992) (no personal jurisdiction where defendant had knowledge that plaintiff would be affected by intentional tort, but otherwise had no other connection with forum); *N.C.C. Motorsports*, 975 F. Supp. 2d 993 (no personal jurisdiction where non-resident defendant entered into a lease with Missouri plaintiff to use plaintiff's copyrighted shopping cart vehicle for promotional purposes, knowingly hired third party to build an infringing shopping cart, and then terminated lease when shopping cart was ready); *Express Scripts, Inc. v. Care Continuum Alliance, Inc.*, 2011 U.S. Dist. LEXIS 61157, 2011 WL 2199967, *4 (E.D. Mo. June 7, 2011) (no personal jurisdiction where defendant did not knowingly target trademark infringement at forum, and defendant had no other contacts with forum).

Even a close examination of *Calder* reveals that the Supreme Court's finding of personal jurisdiction in that case depended on something more than the defendants' knowledge that the plaintiff would feel the brunt of the injury in her state of residence. 465 U.S. at 784–87. Other contacts between the defendants and the forum state were found in *Calder*, including the fact that the defendants made

frequent trips to the forum for business, made direct phone calls to residents of the forum in furtherance of the tort, and published the defamatory article about the plaintiff in the forum, a state where the defendants' publication had its highest circulation. *Id.* All of these facts combined evidenced the *Calder* defendants' purposeful availment of the forum and justified the court's exertion of personal jurisdiction over them.

*Johnson* is particularly instructive to the facts of this case. Plaintiffs invoke the argument that the effect of Defendants' alleged copyright infringement was felt in Missouri by virtue of the fact that two of the Plaintiffs are the holder of the copyright and Missouri citizens. However, the *Johnson* court applied *Calder* to such an argument and rejected it. 614 F.3d at 797–98. The court explained that "even if the effect of [the alleged tort] was felt in Missouri, [the Eighth Circuit] use[s] the *Calder* test merely as an additional factor to consider when evaluating a defendant's relevant contacts with the forum state." *Id.* at 796–97. Following this logic, the *Johnson* court "construed the *Calder* effects test narrowly, and h[e]ld that, absent additional contacts, mere effects in the forum state are insufficient to confer personal jurisdiction." *Id.* at 797.

Here, as noted, Defendants not only have too few additional contacts with Missouri to confer personal jurisdiction on the basis of the *Calder* effects tests, the Individual Defendant have *no* additional contacts with Missouri. *Cf. N.C.C.*

*Motorsports*, 975 F. Supp. 2d 993 (holding that *Calder* effects test did not confer personal jurisdiction in copyright infringement case where defendant had previously entered into a lease with Missouri plaintiff to use plaintiff's copyright).

Based on the application of the *Calder* effects test, the third *Land–O–Nod* factor weighs in favor of Defendants.

### 4. Missouri's Interest in Providing a Forum for its Residents and the Convenience of the Parties

Before the Court considers the final two *Land–O–Nod* factors, it is important to recognize that they cannot outweigh the first three factors. *See Land–O–Nod*, 708 F.2d at 1340 ("For instance, the last two factors are said to be of secondary importance and not determinative.") Defendants argue that because not all of the Plaintiffs are Missouri citizens, the interest of Missouri in litigating this matter here is at best neutral. Defendants argue, also that the fifth—the convenience of the parties—should weigh in favor of Defendants and a transfer of this action. Defendant Capitol Records also seeks transfer based on the location of the parties, witnesses and records. These factors, however, do little to influence the personal jurisdiction analysis in this case, and the Court notes that Missouri's "interest in providing its residents with a forum cannot make up for the absence of minimum contacts." *Digi-Tel Holdings v. Proteq Telcoms.*, 89 F.3d 519, 525 (8th Cir. 1996).

### 5. Due Process Conclusion

For the reasons explained, the Court finds that Plaintiffs failed to allege the minimum contacts with Missouri necessary to comport with the Due Process Clause as it relates to Plaintiffs' claims against Defendant Perry and the Individual Defendants. Although the personal jurisdiction analysis incorporates both a due process inquiry and a long-arm statute inquiry, given that the Missouri long-arm statute authorizes personal jurisdiction to the extent permissible under the Due Process Clause, a finding that a plaintiff has *failed* to establish that personal jurisdiction comports with the Due Process Clause is dispositive in Missouri cases, thus obviating the necessity of a long-arm inquiry. *See Eagle Tech., Inc. v. Expander Ams., Inc.*, 783 F.3d 1131, 1136 (8th Cir. 2015) ("Because 'the Missouri long-arm statute authorizes the exercise of jurisdiction over non-residents to the extent permissible under the due process clause, we turn immediately to the question whether the assertion of personal jurisdiction would violate the due process clause.'") (quoting *Romak USA, Inc. v. Rich*, 384 F.3d 979, 984 (8th Cir. 2004)); *see also Viasystems*, 646 F.3d at 594 ("We need not decide whether these actions by St. Georgen suffice to place it within the bounds of Missouri's long-arm statute, because it is clear that the cited activities are not sufficient to surmount the due-process threshold.").[3] Accordingly, based on the Court's due process analysis, it finds that it does not have personal jurisdiction over Defendants Perry and the

---

[3] By contrast, a court's finding that it *does* have personal jurisdiction over a non-resident defendant requires analysis of *both* the long-arm statute and the Due Process Clause. *See Myers*, 689 F.3d at 909–910 (citing *Bryant v. Smith Interior Design Group, Inc.*, 310 S.W.3d 227, 231 (Mo. banc 2010)).

Individual Defendants arising from the alleged acts in infringing Plaintiffs'
copyright in their song Joyful Noise.

## Motion to Transfer

Defendant Capitol Records does not dispute that the Court has personal
jurisdiction over it, rather, it seeks transfer of this action to either New York, or in
the alternative, California. Plaintiffs argue that because Capitol utilizes this Court
for its own copyright actions, it should not be allowed to now argue that the Court
is inconvenient for this action. Plaintiffs' argument, however, misses the substance
of the Motion. The basis upon which Capitol seeks transfer is particular and
specific to this action, as well it should be. The mere fact that Capitol has had
actions in this Court in the past does not alleviate the inconvenience it argues it
will experience if *this case* is tried here.

Importantly, because the Court will grant the motions to dismiss for lack of
personal jurisdiction over Defendants Perry and the Individual Defendants, the
remaining Defendant would be Capitol. Presumably, Plaintiffs will refile their
action against Perry and the Individual Defendants in a forum which would have
personal jurisdiction over these Defendants, being either New York or California.
Thus, the possibility of duplicative actions based on the same salient facts would
result. Transferring this action to a Court that could preside over all claims against

Perry, the Individual Defendants and Capitol makes sound judicial sense in terms of judicial economy and consistent judgments.

Capitol has presented evidence that it has no offices in Missouri, its principal offices are located in New York and California, thus, witnesses and documents relevant to this action would be located at these offices, the creation of the disputed song occurred in California and Sweden and the distribution of Dark Horse was directed from Capitol's offices in New York and California. The Individual Defendants have declared that the creation of the song occurred in California or Sweden.

Considering all of the above factors, the Court concludes that this matter should be transferred to the Central District of California.

## Conclusion

Based on the foregoing, the Court grants Defendants' Motion to Dismiss for Lack of Personal Jurisdiction, and dismisses this action as to Defendant Perry and the Individual Defendants. The Court grants the Motion to Transfer the action as to Defendant Capitol to the United States District Court for the Central District of California.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Katheryn Hudson, professionally known as Katy Perry's (Perry) Motion to Dismiss the First

Amended Complaint for Lack of Personal Jurisdiction and in the Alternative, to Transfer. [Doc. No. 39], is **GRANTED**.

IT IS FURTHER ORDERED that Defendants Jordan Houston, P/K/A Juicy J, Lukasz Gottwald P/K/A Dr. Luke, Sarah Hudson, Karl Martin Sandberg P/K/A Max Martin, and Henry Walter P/K/A Cirkut's Renewed Motion to Dismiss for Lack of Personal Jurisdiction, [Doc. No 42], is **GRANTED.**

IT IS FURTHER ORDERED that Defendant Capitol Records, LLC's Renewed Motion to Transfer, [Doc. No. 42], is **GRANTED**.

IT IS FURHTER ORDERED that this matter is transferred to the United States District Court for the Central District of California.

Dated this 23rd day of July, 2015.

_____
     HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE